2008-NMCA-044

182 P.3d 146

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Joshua GARCIA, Defendant–Appellant.**

**No. 27,091.**

Court of Appeals of New Mexico.

Feb. 1, 2008.

Certiorari Granted, No. 30,937,
March 25, 2008.

Gary K. King, Attorney General, Santa Fe, NM, James W. Grayson, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Joseph P. Walsh, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Defendant Joshua Garcia appeals the district court's denial of his motion to suppress. On appeal, Defendant argues that under the Fourth Amendment the police officer lacked the reasonable suspicion necessary for an investigatory stop and discovered cocaine as a result of an unconstitutional seizure of his person. Defendant also argues

for the first time on appeal that the New Mexico Constitution affords him greater protection. We hold that Defendant was not seized pursuant to the Fourth Amendment when he discarded the cocaine in his possession, and therefore, the cocaine was not the fruit of an unlawful seizure. We also hold that Defendant failed to preserve his state constitutional claims and that his right to equal protection was not violated by the preservation requirement. We therefore affirm the district court.

## BACKGROUND

{2} At the suppression hearing, a narrative by Officer Lyndall Stansell of the Clovis Police Department was admitted as an exhibit.[1] No other testimony or evidence was admitted. The parties do not dispute that the narrative constitutes the sole factual basis on which the district court based its decision to deny Defendant's motion to suppress. The narrative provides the following.

{3} At approximately 7 p.m. on January 17, 2005, Officer Stansell was dispatched to 515 Rencher Street in Clovis in response to "a possible domestic in progress." According to dispatch, the caller wanted a man named "Joshua Garcia" removed from the residence. Upon arriving at the corner of Fifth Street and Rencher Street, Officer Stansell observed a man, later identified as Garcia (Defendant), walking across Fifth Street on Rencher. Officer Stansell stopped his marked patrol car in the intersection near Defendant and placed his spotlight on him. Officer Stansell exited his patrol car and told Defendant to stop. Defendant continued to walk past the patrol car, and Officer Stansell again ordered him to stop. Defendant said that he was "just going to [his] cousin's house." Officer Stansell saw that Defendant had both hands in his jacket pockets and was "fumbling" with something in his hands. Officer Stansell thought that Defendant was about to run. The officer shined his flashlight on Defendant and while trying to get in front of him again yelled at him to stop.

Defendant continued to fumble with his hands in his pockets, and Officer Stansell feared he might have a weapon. Officer Stansell drew his weapon and twice ordered Defendant to remove his hands from his pockets. Defendant failed to comply and continued to try to walk around the officer. Still fearing Defendant had a weapon, and due to his non-compliance, Officer Stansell utilized a one-second burst of O.C. spray (pepper spray) in an attempt to physically stop Defendant. Instead of stopping, Defendant turned to his right and started walking between the house at 420 Rencher and a vehicle that was parked on the north side of the residence. The officer continued watching Defendant's hands in his pockets. Defendant turned north around the front of the vehicle, and the officer saw something fall to the ground. At that point, Officer Stansell tackled Defendant and placed him in handcuffs. Officer Stansell returned to the front of the vehicle and found a small baggie that contained a substance later identified as cocaine. In a search incident to arrest, another officer discovered a baggie of marijuana. Defendant was transported to the Curry County Detention Center, where he was allowed to decontaminate from the pepper spray.

{4} Defendant was charged with possession of a controlled substance; possession of marijuana; possession of drug paraphernalia; and resisting, evading, or obstructing an officer. Defendant filed a motion to suppress all evidence obtained in violation of the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Defendant argued that he was seized "at some point" during his encounter with Officer Stansell, but that the officer did not have reasonable suspicion to detain him and that Defendant did not voluntarily abandon the contraband. In response, the State argued that Officer Stansell had reasonable suspicion to detain Defendant in order to investigate the domestic disturbance

1. The State points out that defense counsel did not follow the proper procedures for supplementing the record. *See* Rule 12–212 NMRA. Although defense counsel filed a motion to supplement the record with the exhibit, defense counsel merely attached a copy of the narrative to his motion. We appreciate the State's diligence in bringing this deficiency to our attention. However, because the State acknowledges that the text of the attached document is the same as the exhibit, we find it unnecessary to order defense counsel to cure the error.

call and to determine whether Defendant was armed. The district court issued a decision letter denying Defendant's motion to suppress on grounds that the initial stop was justified. At a subsequent hearing on the motion to suppress, defense counsel objected to the court's findings in its decision letter. The district court issued a second letter decision, again denying the motion to suppress.

{5} Reserving the right to appeal the denial of his motion to suppress, Defendant entered a conditional guilty plea and was convicted of possession of a controlled substance and resisting, evading, or obstructing an officer. This appeal followed.

## DISCUSSION

{6} This case presents interesting questions about the application of *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). In *Hodari D.*, a defendant, who fled at the sight of police officers, dropped crack cocaine before he was tackled by the officer who was chasing him. *Id.* at 622–23, 111 S.Ct. 1547. The United States Supreme Court held that a person is not seized for Fourth Amendment purposes when the person does not yield to a show of authority by police. *Id.* at 626, 111 S.Ct. 1547. Because the defendant in *Hodari D.* was not physically restrained and did not submit to authority prior to dropping the cocaine, the Court concluded that the cocaine was abandoned. *Id.* at 629, 111 S.Ct. 1547. Thus, even if the officer did not have reasonable suspicion to pursue the defendant, *see id.* at 623, 111 S.Ct. 1547, the cocaine was not the fruit of an unlawful seizure. *Id.* at 629, 111 S.Ct. 1547.

{7} Under similar facts—a defendant dropped drugs while fleeing from police officers—this Court applied the test from *Hodari D.* in *State v. Rector*, 2005–NMCA–014, ¶¶ 2–3, 6, 136 N.M. 788, 105 P.3d 341 (holding that because the defendant neither submitted to authority nor was restrained by physical force until after he discarded cocaine in his possession, the cocaine was not the fruit of an illegal seizure under the Fourth Amendment). Our courts have also recognized *Hodari D.*'s authority in holding that a defendant's flight could be considered in analyzing reasonable suspicion. *See State v. Harbison*, 2007–NMSC–016, ¶ 2, 141 N.M. 392, 156 P.3d 30.

{8} In this case we are not faced with a defendant who ran at the sight of police officers. Rather, we are faced with a defendant who walked away and refused to comply with an officer's repeated attempts to detain him. Thus, to the extent that Defendant did not submit to Officer Stansell's show of authority, *Hodari D.* controls our determination of when a seizure occurred. Acknowledging that *Hodari D.* applies, Defendant argues that he was illegally seized under the Fourth Amendment when Officer Stansell sprayed him with pepper spray.

{9} Defendant also argues that under the New Mexico Constitution, he was illegally seized earlier, when Officer Stansell drew his weapon and ordered him to stop. Our courts have not yet decided whether our state constitution affords greater protection than the Fourth Amendment in determining when a person who does not comply with police orders is seized. *See Harbison*, 2007–NMSC–016, ¶ 16 n. 3 (leaving open the possibility that Article II, Section 10 may require different standards); *Rector*, 2005–NMCA–014, ¶ 5 (declining to address whether our state constitution affords greater protection than that recognized in *Hodari D.*). Recognizing that he failed to preserve his claim that the New Mexico Constitution affords greater protection, Defendant devotes the greater part of his brief to arguing that this Court should consider it nonetheless. We decline to do so.

{10} A party asserting a state constitutional claim in the absence of existing New Mexico precedent departing from federal authority on the point must cite the relevant constitutional principle and assert in the trial court that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart and provide reasons for interpreting the state provision differently from the federal provision. *State v. Gomez*, 1997–NMSC–006, ¶ 23, 122 N.M. 777, 932 P.2d 1; *see also* Rule 12–216(A) NMRA. Although defense counsel cited to Article II, Section 10 of the New Mexico Constitution in his motion to suppress and

during argument before the district court, defense counsel did not argue that the state constitution affords him greater protection than that afforded under the United States Constitution. *See State v. Castillo-Sanchez,* 1999-NMCA-085, ¶ 21, 127 N.M. 540, 984 P.2d 787 ("Defendant needed to do more than simply cite the state constitution to preserve a claim that it should provide greater protection than the federal constitution."). We therefore review his claim only under the Fourth Amendment. *See State v. Jason L.,* 2000-NMSC-018, ¶ 9, 129 N.M. 119, 2 P.3d 856.

**Standard of Review**

{11} In reviewing the district court's denial of a motion to suppress, we determine "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *Id.* ¶ 10 (internal quotation marks and citation omitted). We defer to the district court's findings of fact to the extent that they are supported by substantial evidence. *Id.* However, we review de novo the district court's application of the law to the facts. *Rector,* 2005-NMCA-014, ¶ 4.

**Fourth Amendment**

{12} The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. Defendant's contention on appeal is that Officer Stansell initiated an investigatory stop without having the requisite degree of suspicion to support it. However, before addressing whether Officer Stansell's intention to detain Defendant was warranted, we must determine at what point in time Defendant was seized within the meaning of the Fourth Amendment. *See Harbison,* 2007-NMSC-016, ¶ 10 ("The point at which the seizure occurs is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop."). If there was no seizure before Defendant discarded the cocaine, then the cocaine would be abandoned and Fourth Amendment protections would not apply. *Id.*

{13} As a preliminary matter, we note that the district court did not make express findings as to when Defendant was seized. In denying the motion to suppress, the district court implied that a seizure occurred at some point, but that it was supported by reasonable suspicion. Even though the district court's denial of the motion to suppress was based on its conclusion that Officer Stansell had reasonable suspicion to support a stop of Defendant, we need not reach this issue if we determine Defendant was not seized before he abandoned the cocaine. *See Rector,* 2005-NMCA-014, ¶ 9. We will affirm the district court if it is right for any reason. *Id.*

{14} We also note that the district court appears to have made an erroneous finding that Officer Stansell sprayed Defendant with pepper spray after he dropped the contraband. On appeal, the parties agree that according to the narrative, which was the only basis for the district court's findings, Defendant dropped the cocaine after he was sprayed with pepper spray.

**Seizure**

{15} Defendant frames the issue on appeal as presenting a novel question with regard to *Hodari D.* about whether an individual who is wounded before being apprehended is seized. We do not accept Defendant's statement of the issue because the record before us does not support Defendant's assertion that he was wounded. We are thus left questioning just how to characterize Defendant's encounter with Officer Stansell. Our inquiry is guided by the rule that Defendant bears the burden of proving a seizure occurred. *State v. Baldonado,* 115 N.M. 106, 110, 847 P.2d 751, 755 (Ct.App. 1992) (stating that it is the defendant's burden to demonstrate that a seizure occurred that implicated his constitutional rights). The burden then shifts to the State to prove that there was reasonable suspicion or probable cause. *Id.*

{16} We begin with Officer Stansell's initial contact with Defendant. Not every encounter between a law enforcement officer and a citizen triggers Fourth Amendment scrutiny. As long as the person being

questioned remains free to disregard an officer's questions and walk away, there is no intrusion upon that person's liberty or privacy that requires some particularized and objective justification. *United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). An encounter becomes a seizure, for Fourth Amendment purposes, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A seizure by physical force is effectuated by "the mere grasping or application of physical force with lawful authority." *Hodari D.*, 499 U.S. at 624, 111 S.Ct. 1547. A seizure by show of authority is completed when, under all of the circumstances, a reasonable person would have believed that he was not free to leave *and* the suspect actually submits to the show of authority. *Id.* at 627–29, 111 S.Ct. 1547.

{17} Here, we can assume that Officer Stansell's actions before he used the pepper spray constituted a show of authority. *See Harbison*, 2007–NMSC–016, ¶ 12 (stating "there is no question of a show of authority at the time the detectives drew their weapons and gave orders for people to stop moving"). However, there is no evidence that Defendant submitted to the officer's show of authority. Even though Defendant did not flee from Officer Stansell, Defendant continued to walk away and ignored orders to stop and to show his hands. Because Defendant failed to comply with the officer's injunctions, we are compelled to conclude that Defendant was not seized prior to the use of the pepper spray. *See Hodari D.*, 499 U.S. at 629, 111 S.Ct. 1547.

{18} A more difficult question is whether the use of pepper spray on Defendant constituted a seizure. In most instances, there would be little room for argument as to whether the use of pepper spray by law enforcement officers constitutes a seizure. For example, we agree that the uses of pepper spray were clearly seizures in the cases on which Defendant relies. *See Yelverton v. Vargo*, 386 F.Supp.2d 1224, 1228 (M.D.Ala. 2005) (stating in an excessive force case that an officer's pepper spraying of an individual was a seizure even though it did not stop him); *Logan v. City of Pullman*, 392 F.Supp.2d 1246, 1260 (E.D.Wash.2005) (stating in an excessive force case that the use of pepper spray constituted a seizure of the individuals the officers intended to seize).

{19} In *Yelverton*, police officers attempted to stop several fights in the parking lot of a bar. *See* 386 F.Supp.2d at 1227. When one of the patrons jumped into his pickup truck, an officer yelled at him to stop. *Id.* When the patron ignored the officer and drove recklessly out of the parking lot, an officer sprayed him in the face with pepper spray. *Id.* The patron threw up his left arm over his face and then rammed into an unmarked police car before leaving the parking lot with officers following. *Id.* After driving erratically, the patron crashed his truck and was killed. *Id.* In determining that the pepper spray constituted a seizure, the court relied on *Hodari D.'s* statement that the " 'application of physical force to restrain movement, even when it is ultimately unsuccessful' " is sufficient. *Id.* at 1228 (quoting *Hodari D.*, 499 U.S. at 626, 111 S.Ct. 1547). Unlike the present case, there was no question in *Yelverton* about whether the pepper spray restrained the individual's movement, even though the individual managed to drive away.

{20} In *Logan*, police officers also used pepper spray in response to a fight at a nightclub. *See* 392 F.Supp.2d at 1254–57. At issue in the case was whether individuals on the second floor who suffered the secondary effects of the pepper spray were seized. *Id.* at 1259–60. The federal district court held that only the plaintiffs on the first floor who were intentionally sprayed were seized within the meaning of the Fourth Amendment because the officers dispersed pepper spray in an attempt to gain physical control over those individuals. *Id.* at 1260. Notably, the evidence presented in *Logan* indicated that there was a lot of pepper spray used during the encounter and that it caused extreme physical reactions. *Id.* at 1256–57. Also, it was quite clear that the pepper spray resulted in the seizure of the intended individuals. *See id.* at 1256 (noting that three police officers each discharged pepper spray

toward the individuals who were actively fighting, stepped outside to let it take effect, and then reentered to make arrests and stop the fighting).

{21} In contrast, the record in the present case does not clearly demonstrate that the use of pepper spray constituted either physical force or a show of authority to which Defendant submitted. On appeal, Defendant asserts that he was both "subdued" and "partially blinded" by the pepper spray. However, as Defendant himself contends, the facts of this case are based on Officer Stansell's narrative, which contains nothing about the impact of the pepper spray on Defendant. The only indication that the pepper spray actually touched Defendant was Officer Stansell's mention that Defendant was allowed to decontaminate from the pepper spray at the detention center. The narrative does not indicate that the pepper spray had any effect on Defendant, who continued to walk away, making two turns before dropping the baggie of cocaine beneath a parked car. There is nothing to indicate that the pepper spray interfered with Defendant's freedom of movement, impeded his progress, or caused him to drop the cocaine.

{22} Moreover, defense counsel made no attempt to argue this point below. Defense counsel's assertions that Defendant was seized "at some point" were based on general allegations that lumped together all of Officer Stansell's actions. Defense counsel argued that Defendant was seized "[p]erhaps when Stansell told [Defendant] to 'Stop', drew his firearm, sprayed him with OC, tackled him and placed him in handcuffs." Although it is conceivable that the encounter between Defendant and Officer Stansell may have involved a seizure, Defense counsel did not develop any facts to support his argument on appeal that the pepper spray restrained Defendant's freedom of movement or constituted a show of authority to which Defendant submitted.

{23} On this record, we conclude that Defendant failed to meet his burden of showing that he was seized by the pepper spray. Thus, even though Defendant frames the issue on appeal as addressing a situation in which a defendant is injured by physical force, it would appear that Defendant has overstated the facts. Unlike the cases upon which he relies, there is no indication that Defendant was affected or even deterred to the slightest degree from his voluntary actions by the use of the pepper spray.

{24} Even if we were to assume that the one-second pepper spray satisfied the requirement of physical force in *Hodari D.* based on mere physical contact with Defendant, we would not be persuaded that this case could be removed from the control of *Hodari D.* We recognize that *Hodari D.* appears to distinguish between physical force and a show of authority, requiring submission only with a show of authority. *See Hodari D.*, 499 U.S. at 626, 111 S.Ct. 1547 ("An arrest requires *either* physical force … *or,* where that is absent, *submission* to the assertion of authority."). At one point, the Court suggests: "[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *Id.* But the Court also reasons:

> To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity. If, for example, [the police officer] had laid his hands upon Hodari to arrest him, but Hodari had broken away and had *then* cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest.

*Id.* at 625, 111 S.Ct. 1547. Although the case before the Supreme Court in *Hodari D.* was "one step further removed" from this hypothetical, involving an unsuccessful show of authority and no use of physical force, the Court stated the issue before it as addressing both: "[t]he narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not." *Id.* at 625–26, 111 S.Ct. 1547. We believe that *Hodari D.* dictates that even if what appears to be an entirely unsuccessful attempt to physically restrain Defendant was

a seizure, Defendant's ability to break away before casting away the cocaine removed that action from the seizure.

{25} We find support for this interpretation in the policy behind *Hodari D.* The Supreme Court sought to confine the meaning of seizure as not including attempted seizures in order to encourage compliance with police orders. *See id.* at 627, 111 S.Ct. 1547 ("Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged.").

{26} The Supreme Court has indicated in other opinions that a mere grasping might not be a continuing arrest if the individual is not deterred. *See Brower v. County of Inyo,* 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (stating that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control").

> It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Id.* at 596–97, 109 S.Ct. 1378. Thus, the Supreme Court appears to require a relationship between the method police officers use to detain an individual and the actual stop. *See id.* at 599, 109 S.Ct. 1378 ("We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result."). More recently, the Court stated that "a fleeing man is not seized until he is physically overpowered." *Brendlin v. California,* — U.S. —, —, 127 S.Ct. 2400, 2409, 168 L.Ed.2d 132 (2007).

{27} Other Courts have also concluded that a seizure does not occur if an officer applies physical force in an attempt to detain an individual but that force is ineffective. *See United States v. Bradley,* 196 F.3d 762, 768 (7th Cir.1999) (stating that for a seizure

to be effected under *Hodari D.* the physical force or show of authority must cause the fleeing subject to stop); *United States v. Hernandez,* 27 F.3d 1403, 1407 (9th Cir.1994) ("A seizure does not occur if an officer applies physical force in an attempt to detain a suspect but such force is ineffective.").

{28} Based on the Supreme Court's discussion of similar circumstances—where a defendant escapes a brief physical seizure— we are constrained to apply *Hodari D.* in this case given that we cannot determine with certainty that a seizure even took place. Thus, we hold that even if Defendant was seized by what appears to be no more than a de minimis contact with pepper spray, the encounter did not result in a continuing seizure. Because Defendant walked away from the attempted seizure before he cast away the drugs and was tackled, we conclude that Defendant was not seized under the Fourth Amendment; rather, he voluntarily abandoned the drugs. *But see State v. Ingram,* 1998–NMCA–177, ¶¶ 13–16, 126 N.M. 426, 970 P.2d 1151 (holding that unlike *Hodari D.* an actual illegal seizure occurred and the defendant did not voluntarily abandon drugs in his attempt to escape that illegal search). Because we find that Officer Stansell discovered cocaine in Defendant's possession when he was not seized under the Fourth Amendment, we need not reach Defendant's argument that the officers lacked reasonable suspicion to stop him. *See Rector,* 2005–NMCA–014, ¶ 9.

## Equal Protection Claim

{29} We also reject Defendant's claim that the preservation requirement for state constitutional claims denies equal protection to those defendants whose trial counsel do not sufficiently raise the state constitutional issue at trial. Defendant contends that preservation rules create two classes of similarly situated defendants, but treats them differently by permitting all defendants who have expounded on the greater protections of the constitution at trial to invoke its protections on appeal but excluding those defendants who have not explained at trial why the New Mexico Constitution should afford them greater protection.

{30} Defendant's equal protection argument is inherently flawed. To make an equal protection claim, Defendant must first show that the challenged action "draws classifications that discriminate against a group of persons to which [he] belongs." *Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 537, 893 P.2d 428, 433 (1995). Defendant cannot satisfy this threshold requirement.

{31} In *Gomez,* the New Mexico Supreme Court made it clear that its requirement that state constitutional claims be preserved is simply a specific application of the general rule of preservation required by Rule 12–216(A). *See Gomez,* 1997–NMSC–006, ¶ 14. The class of individuals to which the rule applies includes all appellants before the appellate courts. Every litigant must properly preserve an error in the trial court to assert it on appeal. Rule 12–216(A) treats all individuals in this class alike. Thus, Defendant cannot demonstrate that the preservation requirement discussed in *Gomez* draws a classification that discriminates against his class in the exercise of his appellate rights. Defendant was treated differently due to his failure to follow established rules of appellate procedure. Thus, he is simply not similarly situated with those litigants who comply with Rule 12–216(A).

{32} Because Defendant fails to make a threshold showing, we reject his equal protection claim.

**CONCLUSION**

{33} We hold that Officer Stansell did not acquire the cocaine evidence Defendant seeks to suppress by violating Defendant's Fourth Amendment rights. We therefore affirm the district court's denial of Defendant's motion to suppress.

{34} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CYNTHIA A. FRY, Judges.