IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-021

Filing Date: November 6, 2013

Docket No. 31,253

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

TIAKEBIA MURRY,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Kenneth Martinez, District Judge

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**FRY, Judge.**

**{1}** Defendant Tiakebia Murry appeals from the district court's denial of her motion to suppress evidence based on an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Following a hearing in which the motion was denied, Defendant entered a conditional no contest plea to possession of a controlled substance (cocaine), reserving the right to appeal the denial of her motion. Defendant contends that she was seized without

1

reasonable suspicion when two police officers approached the parked vehicle she was sitting in as a passenger and ordered the driver to open the door and that the evidence discovered as a result of her illegal detention must be suppressed. We agree. Accordingly, we reverse.

**BACKGROUND**

**{2}** Defendant was indicted on a single count of possession of a controlled substance (cocaine) (felony - narcotic drug). Defendant subsequently filed a motion for the suppression of evidence obtained in violation of Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment to the United States Constitution. A hearing on the motion was held by the district court, and the motion was ultimately denied. Albuquerque Police Department (APD) Officer Connor Rice was the sole witness at the hearing, and the following facts, as well as those included throughout this Opinion, were developed during the course of his testimony.

**{3}** APD Officers Rice and Nick Wilson were on bicycle patrol on Texas Street NE during the afternoon of March 2, 2010. This was a routine patrol, and there had been no reports or dispatches regarding suspicious or criminal activity in the area. The officers were dressed in uniform and displaying their badges of office. As they rode northbound on Texas Street, Officer Rice observed a black Audi station wagon parked in an apartment complex parking lot. He did not recognize the car as being from the area. The car was parked in a marked parking space facing westbound, toward the apartment building. Officer Rice's suspicion was aroused when he noticed that there were three individuals sitting in the car and the motor was not running. He admitted, though, that he did not see anything to indicate that any of the car's occupants were doing anything illegal or criminal. As the officers rode closer to the car, Officer Rice observed the passenger in the backseat, later identified as Defendant, move "abruptly over to her right" and then back to her left. Both officers were still behind the car at the point when Officer Rice saw this movement, and he "couldn't say" whether Defendant saw him or not.

**{4}** The officers decided to approach the car to "see what was going on, see what they were up to, make sure that everything was okay." They pulled up and parked their bikes "behind the vehicle, like kind of behind probably toward[] the driver side." As the two officers walked toward the front of the car, Officer Rice observed the driver make an abrupt movement, which he described as dropping his shoulder down. Concerned for officer safety because of this movement, Officer Rice did not ask the occupants any of the questions he had originally intended. He instead began his interaction with the occupants by telling the driver, "S[ir], open the door," or "Hey, man, open the door." The driver immediately opened the door.

**{5}** As soon as the driver opened his door, Officer Rice noticed an open alcoholic beverage can in the driver's side door sill. In the center console between the driver and front passenger, Officer Rice observed a clear plastic sandwich bag containing a small amount of green leafy substance he believed to be marijuana. Officer Rice then asked the driver to step

2

out of the car. In order to further investigate, and for officer safety, he asked the front passenger and Defendant to also get out of the car. He testified that at that point, all three of the vehicle's occupants were being detained for investigation of the open alcohol container and the marijuana.

{6}     When Defendant got out of the car, Officer Rice saw a woman's purse sitting on the backseat next to where Defendant had been sitting. There were a number of small denomination bills crumpled up and sitting on top of the purse. He also noticed that there was a similarly "fairly tightly" crumpled bill on the floorboard where Defendant's feet had been, and it appeared that there was a white powdery substance along the inside of the bill.

{7}     Officer Rice patted down the driver for weapons, and Officer Wilson patted down Defendant. No weapons or contraband were discovered during the course of the pat downs. The officers requested identification from all three individuals, conducted a wants and warrants check, and discovered that the driver had an outstanding misdemeanor arrest warrant and that Defendant was on probation. At that point, the officers decided to arrest the driver for possession of marijuana, open container, and for the outstanding warrant. Because the car did not belong to any of the three occupants, the officers made the decision to have it towed. In an effort to inventory the vehicle prior to the tow, Officer Rice took the twenty-dollar bill from the floorboard and poured the white powdery residue, believed by him to be cocaine, into a bag for further testing. Defendant was then placed under arrest for possession of cocaine.

**DISCUSSION**

{8}     On appeal, Defendant raises the following issues: (1) the initial encounter between the police and Defendant was not consensual but rather was a seizure for which reasonable suspicion did not exist; (2) the district court erred in finding that individualized, particularized reasonable suspicion existed as to Defendant with regard to the marijuana found in the center console of the car; (3) the district court erred in finding that the plain view exception to the warrant requirement authorized the officer to seize from the back floorboard a twenty-dollar bill that was not readily apparent contraband; and (4) the State failed to meet its burden of proof with regard to the doctrine of inevitable discovery.

{9}     We hold that Defendant was seized by police when, after the two officers approached the parked vehicle she was sitting in, Officer Rice ordered the driver to open his door. Because the officers did not at that point have reasonable suspicion to justify the seizure of any of the occupants of the vehicle, we need not reach the other issues raised by Defendant, except insofar as to reach the conclusion that the inevitable discovery doctrine does not apply in this case where the anticipated inventory search would not have been wholly independent of the illegal seizure.

**I.      Standard of Review**

3

**{10}** In reviewing a district court's ruling denying a motion to suppress, the appellate courts draw all reasonable inferences in favor of the ruling and defer to the district court's findings of fact as long as they are supported by substantial evidence. *State v. Jason L.*, 2000-NMSC-018, ¶¶ 10-11, 129 N.M. 119, 2 P.3d 856. If the district court does not state on the record a disbelief of uncontradicted testimony, we "presume the court believed all uncontradicted evidence." *Id.* ¶ 11. "When a seizure occurred and whether it was based on reasonable suspicion are mixed questions of fact and law because they involve the mixture of facts and evaluative judgments." *State v. Eric K.*, 2010-NMCA-040, ¶ 14, 148 N.M. 469, 237 P.3d 771. We evaluate those questions de novo. *Id.*

## II. The Initial Encounter Was Not Consensual and Constituted a Seizure

**{11}** Only investigatory detentions and arrests are considered seizures for the purposes of the Fourth Amendment's protection against unreasonable searches and seizures. *Jason L.*, 2000-NMSC-018, ¶ 14. While both the State and Defendant acknowledge that Defendant was seized by the police at some point in the encounter, they disagree as to when exactly the seizure occurred. Defendant contends that she was seized when the officers approached the car and ordered the driver to open the door. The State argues that Defendant was not seized until she was asked to exit the car following Officer Rice's discovery of marijuana in the center console. Everything up to that point, according to the State, was a consensual encounter. "The point at which seizure occurs is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop." *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30.

**{12}** Under *United States v. Mendenhall*, 446 U.S. 544 (1980), "a person is seized within the meaning of the [F]ourth [A]mendment when, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *State v. Lopez*, 1989-NMCA-030, ¶ 4, 109 N.M. 169, 783 P.2d 479, *holding modified on other grounds by Jason L.*, 2000-NMSC-018. This is a case-by-case determination balancing the intrusion into individual privacy against the State's interest in crime prevention, looking at the totality of the circumstances. *Jason L.*, 2000-NMSC-018, ¶ 14.

**{13}** The State correctly asserts that the police do not need justification to approach a person and ask that person questions, so long as the actions of the officers do not "convey a message that compliance with their requests is required." *Id.* (internal quotation marks and citation omitted). Police contact is consensual so long "as a reasonable person would feel free to disregard the police and go about his business[] or to decline the officers' requests or otherwise terminate the encounter." *State v. Scott*, 2006-NMCA-003, ¶ 18, 138 N.M. 751, 126 P.3d 567 (internal quotation marks and citation omitted). However, "if an officer conveys a message that an individual is not free to walk away, by either physical force or a showing of authority, the encounter becomes a seizure under the Fourth Amendment." *State v. Gutierrez*, 2008-NMCA-015, ¶ 9, 143 N.M. 522, 177 P.3d 1096 (internal quotation marks and citation omitted). Additionally, for purposes of the Fourth Amendment, "a seizure based on a show of authority, as opposed to physical force, requires submission to the assertion of

4

authority." *Harbison*, 2007-NMSC-016, ¶ 13 (emphasis, internal quotation marks, and citation omitted).

**{14}**     In making the determination as to whether a person was seized, we evaluate: "(1) the circumstances surrounding the contact, including whether police used a show of authority; and (2) whether the circumstances of the contact reached such a level of accosting and restraint that a reasonable person would have believed he or she was not free to leave." *Scott*, 2006-NMCA-003, ¶ 17 (internal quotation marks and citation omitted). The first of these determinations is a fact-based inquiry that we review for substantial evidence. *Jason L.*, 2000-NMSC-018, ¶ 19. The second is a legal inquiry wherein we apply those facts to the law de novo. *Id.*

### A.     Circumstances Surrounding the Contact

**{15}**     Evaluating the circumstances surrounding the contact, we first note that the district court did not make any factual findings. "This is a regular occurrence when we review decisions on motions to suppress evidence in criminal cases." *State v. Gonzales*, 1999-NMCA-027, ¶ 11, 126 N.M. 742, 975 P.2d 355. Therefore, we presume that the district court believed the uncontradicted testimony of the sole witness, Officer Rice. Where the testimony is unclear, we will decide in favor of the district court's ruling, unless that ruling is wrong as a matter of law. *See State v. Werner*, 1994-NMSC-025, ¶ 10, 117 N.M. 315, 871 P.2d 971 (stating that "[a] reviewing court is not . . . bound by a [district] court's ruling when predicated upon a mistake of law" (internal quotation marks and citation omitted)).

**{16}**     Looking at the initial encounter in this case, two police officers on bicycle patrol, in uniform and wearing their badges of office, became suspicious when they noticed three individuals sitting in an unfamiliar car parked in an apartment complex parking lot. Officer Rice became even more suspicious when he observed Defendant, sitting in the backseat, make an "abrupt" movement. Although they were unaware of how long the individuals had been in the car, the officers decided to approach them to "see what was going on, see what they were up to, make sure that everything was okay." Officer Rice intended to ask the passengers "where they came from, where they lived, if they were here to see anybody, what exactly was going on." As he approached the car from behind, Officer Rice observed the driver "drop[]" his left shoulder down. Concerned for officer safety because of this abrupt movement, Officer Rice did not ask the occupants any of the questions he had originally intended. In fact, there were no preliminary introductions or questions put to the driver or the passengers. Instead, Officer Rice's first words, addressed to the driver, were either, "S[ir], open the door," or "Hey, man, open the door." The driver immediately opened the door.

**{17}**     The State, both at the motion hearing and in its brief, repeatedly characterized the statements, "S[ir], open the door," or "Hey, man, open the door," as "requests," or as the officer "asking" the driver to open his door. On appeal, the State urges us to defer to the district court as fact finder and to infer that the district court found that "Officer Rice's tone

was not so coercive that it rendered the encounter non-consensual."

**{18}** While we would normally defer to the district court's findings of fact if supported by substantial evidence, in this case it is unclear from the record what the district court's findings were. There were no oral or written findings of fact. However, the district court concluded as a matter of law that "the officer had the right to approach the vehicle to briefly detain the occupants, determine, you know, what they were doing and where they were, why they were there." Because the State essentially conceded during the hearing that reasonable suspicion did not exist until at least after the driver opened the door and Officer Rice observed the marijuana in the center console, the ruling made by the district court was wrong as a matter of law. We are not bound by a ruling predicated on a mistake of law. *Werner*, 1994-NMSC-025, ¶ 10.

**{19}** Furthermore, aside from the tone of voice, the State provides no reasoning as to why we should interpret Officer Rice's plain, unequivocal language as a "request" and not as an order from a uniformed police officer. Thus, based on the actual language Officer Rice used and not on counsel's characterization, we determine that Officer Rice ordered the driver to open his door.

### B.    A Reasonable Person Would Not Have Believed She Was Free to Leave

**{20}** The approach of the car by the two officers and the subsequent order to open the door was the extent of the initial encounter between the officers and the occupants of the car. The crux of this case is whether that constituted a "show of authority" at such a level of "accosting and restraint" that it would have conveyed the message to the occupants that they were not free to leave. Three factors should be considered in order to determine whether a reasonable person would feel free to walk away from an encounter with police: "(1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Jason L.*, 2000-NMSC-018, ¶ 15 (internal quotation marks and citation omitted). Examples of circumstances that might indicate a seizure would be "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Lopez*, 1989-NMCA-030, ¶ 3 (internal quotation marks and citation omitted). We find the following cases to be instructive in making our determination.

**{21}** In *Jason L.*, police officers saw two boys walking down the street. 2000-NMSC-018, ¶ 3. As in the present case, there had been no reports of criminal or suspicious activity, but the officers thought that the boys were acting suspiciously because they kept looking over their shoulders and one of the boys was fussing with his waistband. *Id.* ¶ 13. The officers approached, told the boys to "[c]ome here," and then began to ask them questions about whether they had any knives or weapons. *Id.* ¶¶ 13, 16, 17 (internal quotation marks omitted). The Court held that the boys were seized at that point in part because the officers "did not ask to speak to the boys, but rather demanded that they approach." *Id.* ¶ 17. The

Court also pointed out that "[a]t no point did the officers tell either boy they were free to leave or that they were not required to answer their questions. While case law has not required such advice, its absence is a relevant factor." *Id.* ¶ 18.

**{22}** In *State v. Garcia*, the defendant was walking down the street when an officer stopped his police vehicle near the defendant, shined a spotlight on him, and "told, ordered, or yelled at [the d]efendant to stop." 2009-NMSC-046, ¶ 41, 147 N.M. 134, 217 P.3d 1032 (internal quotation marks omitted). The Court held that these "initial actions demonstrated accosting and restraint." *Id.* The Court stated that "[t]he critical factor is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it occurred between two ordinary citizens." *Id.* ¶ 38 (internal quotation marks omitted) (quoting 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(a), at 582-83 (5th ed. 2012) (footnotes omitted)).

**{23}** In *State v. Soto*, 2008-NMCA-032, ¶ 1, 143 N.M. 631, 179 P.3d 1239, two officers on patrol observed the defendant riding a bike on a road near a secured area around 2:30 a.m. The officers decided to see where he was headed, so they pulled their police car up next to him. *Id.* They did not turn their lights on or attempt "an enforcement stop." *Id.* ¶ 3 (internal quotation marks omitted). In response to the police car pulling up beside him, the defendant stopped his bike. *Id.* We stated that "[w]e presume the citizen to be an innocent reasonable person" and we "consider the sequence of the officer's actions and how a reasonable person would perceive those actions." *Id.* ¶ 6 (internal quotation marks and citation omitted). We determined that the defendant "submitted to this show of authority by stopping his bicycle" and that he was therefore seized. *Id.* ¶ 13.

**{24}** In the present case, two police officers approached a parked car and one officer immediately ordered the driver to open his door. The driver was not told that he was free to disregard this order or that he was free to drive away. If this had been contact between two ordinary citizens, the demand by one to the other to open his car door would surely be seen as offensive. A reasonable innocent person receiving the same order from a uniformed police officer would perceive that he was not free to disregard the order, let alone free to leave. This is especially true where "[t]here were no preliminary questions; [the d]efendant did not initiate the encounter, and the officer did not begin the encounter in a conversational manner." *State v. Williams*, 2006-NMCA-062, ¶ 14, 139 N.M. 578, 136 P.3d 579 (internal quotation marks omitted). The driver in this case immediately complied with the order and opened his door. Contrary to the State's characterization of this as an act of "consent" in which the driver did not seem "reluctant," it is more properly viewed as submission to the police officers' assertion of authority. Therefore, under the Fourth Amendment, the driver was seized by the officers at the moment he opened his door in compliance with the officer's order.

**{25}** The next question, then, is whether the passengers, including Defendant, were also seized at the time the officer ordered the driver to open his door. The State contends that

7

even if the "request" to open the door is considered an "order," the order itself was directed toward the driver of the vehicle and not toward Defendant. The State further argues that a reasonable person in Defendant's position would have felt that she was free to leave because she was never told that she was not free to leave, and she remained physically able to leave the vehicle and walk away. We do not agree.

**{26}** "It is well established that the initiation of a traffic stop constitutes a seizure of the vehicle's occupants." *State v. Portillo*, 2011-NMCA-079, ¶ 12, 150 N.M. 187, 258 P.3d 466; *see State v. Olson*, 2012-NMSC-035, ¶ 11, 285 P.3d 1066 (holding that "[a]n automobile stop and the attendant detention of its occupants is a seizure" (internal quotation marks omitted)). This is in line with the United States Supreme Court's holding in *Brendlin v. California* that in the context of a traffic stop, "[a]ny reasonable passenger would have understood the officers to be exercising control to the point that no one in the car was free to depart without police permission." 551 U.S. 249, 250 (2007). The Supreme Court further stated that merely "by staying inside" the car, the passenger submitted to the assertion of police authority. *Id.* at 250, 262. The Supreme Court explained that it is "reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." *Id.* at 258. Although the present case does not involve a traffic stop, the same rationale applies where there were no indicia of a consensual encounter that would have allowed a passenger to differentiate this contact from an investigation.

**{27}** Furthermore, when officer safety is a concern, "risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997) (internal quotation marks and citation omitted). Thus, when Officer Rice immediately ordered the driver to "open the door" after he perceived a movement that made him concerned for officer safety, he was clearly exercising command of the situation. However, "unquestioned police command [is] at odds with any notion that a passenger would feel free to leave." *Brendlin*, 551 U.S. at 258 (alteration, internal quotation marks, and citation omitted). This is supported by the fact that the officers in the present case did not tell the passengers that they were free to leave. It is not reasonable to believe that Officer Rice would have simply let Defendant get out of the vehicle and walk away, especially given that Defendant was subjected to a pat down search for "officer safety" as soon as she left the vehicle at the officer's request.

**{28}** It is clear from the circumstances that a reasonable person in Defendant's position would not have felt free to leave. By remaining in the vehicle until Officer Rice asked her to get out, Defendant submitted to the officers' assertion of authority. Relying on *Williams*, 2006-NMCA-062, ¶ 17, that "[i]t would be incongruous for us to hold that the Fourth Amendment provides greater protections for an individual in a moving vehicle than it provides for an individual in a nonmoving vehicle[,]" we hold that Defendant was seized for purposes of the Fourth Amendment when the two uniformed police officers approached the vehicle and immediately ordered the driver to open his door.

8

### III. Reasonable Suspicion Did Not Exist at the Inception of the Seizure

**{29}** Having concluded that Defendant was seized by the police officers at the time of the initial encounter, we must next determine whether the seizure was lawful. "[A]n officer may stop and detain a citizen if the officer has a reasonable and articulable suspicion that the person stopped is or has been involved in criminal activity." *State v. Watley*, 1989-NMCA-112, ¶ 17, 109 N.M. 619, 788 P.2d 375. "The critical question . . . [is] whether the officer had an individualized suspicion that [the d]efendants were violating any law when he subjected [the d]efendants to detention." *State v. Patterson*, 2006-NMCA-037, ¶ 23, 139 N.M. 322, 131 P.3d 1286. "Determinations of reasonable suspicion are reviewed de novo." *Harbison*, 2007-NMSC-016, ¶ 8.

**{30}** Officer Rice testified during the suppression hearing that when he first saw the car parked in the parking lot, he had not observed the occupants doing anything illegal or violating any laws. The occupants were merely sitting in the car, and the officers did not know how long they had been there. No reports or dispatches had been received regarding suspicious or criminal activity in the area. Officer Rice stated only that "[i]t raised my suspicion because it was occupied, not running, some of the other crimes in that area that I've investigated before have shown me that when that's occurring, there's a possibility of any number of things going on." Officer Rice also found it to be suspicious that he had not seen this car in the area before.

**{31}** As the officers rode their bikes closer, but while they were still located down the street and behind the car, Officer Rice saw Defendant move abruptly to her right and back to the left. Officer Rice testified that based upon his training and experience, "it's common for people who may have something to hide, who may be up to something, when they see the police to move suddenly to either conceal whatever is in their hand, to cover something up, to grab something, possibly, abrupt movement is a clue that something may—something else may be going on." After the officers had parked their bikes and as they were approaching the occupants to ask them the basic questions discussed earlier, Officer Rice saw the driver drop his shoulder down.

**{32}** "Reasonable suspicion must exist at the inception of the seizure." *Jason L.*, 2000-NMSC-018, ¶ 20. The question, then, is whether the movement to the right and back to the left by Defendant, at the time sitting in the backseat of a parked car for an unknown period of time, and the driver's subsequent movement of his shoulder downward provided the officers with individualized reasonable suspicion that the occupants of the car were engaged in criminal activity or violating any law. The answer here is that they did not, especially where there had been no reports or dispatches of suspicious activity in the area and without any evidence that Defendant or the driver actually saw the police officers prior to making their movements. It is also clear that the officers did not have a reasonable suspicion that Defendant or the driver posed a "danger of harm from weapons." *State v. Affsprung*, 2004-NMCA-038, ¶ 20, 135 N.M. 306, 87 P.3d 1088. Balancing Defendant's privacy interest against the State's interest in preventing crime, the seizure of Defendant in this case was

9

unreasonable. The fact that the officer's hunch ultimately proved to be correct does not make reasonable a suspicion based on nothing more than two abrupt movements by the occupants of a lawfully parked car.

## IV.    The Evidence Found as a Result of the Illegal Seizure Must Be Suppressed

**{33}**    "It is established law that evidence discovered as a result of the exploitation of an illegal seizure must be suppressed unless it has been purged of its primary taint." *Portillo*, 2011-NMCA-079, ¶ 25. In *Portillo*, we agreed that "we have conducted the fruits analysis in the exact same manner with respect to each type of occupant, whether driver or passenger." *Id.* ¶ 30 (internal quotation marks and citation omitted). In this case, the driver opened the car door and exposed the open container and marijuana to the officer as a direct result of the illegal seizure of the occupants of the car. The subsequent discovery of the twenty-dollar bill containing suspected cocaine residue occurred only after the officer asked Defendant to get out of the car to investigate the marijuana. There was no evidence presented that would indicate that any of this evidence was purged of its primary taint. Thus, this evidence was "come at by the exploitation of th[e] illegality" and must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (internal quotation marks omitted).

**{34}**    As to the State's contention that the suspected cocaine would have been inevitably discovered during an inventory search of the vehicle, we are not persuaded. For the inevitable discovery doctrine to apply, "the lawful means by which the evidence could have been attained must be wholly independent of the illegal actions." *State v. Wagoner*, 2001-NMCA-014, ¶ 13, 130 N.M. 274, 24 P.3d 306. The inventory search in this case was contingent on at least the driver being arrested and the car towed. However, because the arrest of the driver was predicated solely on the evidence discovered as a result of the illegal seizure, including the fact that he had an outstanding warrant for his arrest, we conclude that the purported inventory search would not have been wholly independent of the illegal seizure.

## CONCLUSION

**{35}**    Defendant was seized without reasonable suspicion and evidence was discovered as a result of the exploitation of her illegal detention. We reverse the district court's denial of Defendant's motion to suppress.

**{36}    IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____

10

**JAMES J. WECHSLER, Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for _State v. Murry_, No. 31,253**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Fourth Amendment
New Mexico Constitution, General
Suppression of Evidence

**CRIMINAL LAW**
Controlled Substances

**CRIMINAL PROCEDURE**
Motion to Suppress
Nolo Contendere Plea
Reasonable Suspicion
Search and Seizure
Warrantless Arrest
Warrantless Search

11