This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36436

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**BERNARDO BACA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VARGAS, Judge.**

{1}     Defendant Bernardo Baca appeals from his conviction for possession of methamphetamine, contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2019), possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019), and tampering with evidence, contrary to NMSA 1978, Section, 30-22-5(A) (2003). Defendant raises two issues on appeal. First, he contends the district court erred when it denied his motion to suppress the methamphetamine and

pipes found after he was ordered to "get up" and come out of a car by police while a passenger during a traffic stop. Second, Defendant claims there was insufficient evidence to support any of his convictions. Finding no error, we affirm.

**BACKGROUND**

**{2}** Clovis Police Officer Antonio Orozco stopped a GMC Yukon driving with a malfunctioning brake light and license plate light. As he approached the car, Officer Orozco saw a woman sitting in the driver's seat and one male passenger in the second row of seats. He called for additional assistance and Officers Travis Loomis and Jared Romero came to the scene. After obtaining the driver's and passenger's information, the officers discovered active arrest warrants for both the driver and passenger and arrested them both. Following the removal of the first two occupants from the car, Officer Orozco looked through the window of the car with his flashlight and saw Defendant on the floor of the third row seat under some clothes. Only the top of Defendant's head and his ear were visible. Officer Orozco testified at the suppression hearing that before seeing Defendant's head, he did not know that a third person was in the car or that Defendant had been hiding during the entire traffic stop, and those facts concerned him. Officer Orozco alerted the other officers that another person was in the car and they began knocking on the window and directing Defendant to come out. Officer Orozco testified that, "we were instructing [Defendant] to come out, at this point we did have our guns drawn at him, because we could not see his hands and he was actively reaching underneath the seat." Officer Orozco explained that while Defendant was still in the car and officers were directing him to come out, they recognized Defendant, ran his name through dispatch, and was advised that he had active arrest warrants.

**{3}** Once Defendant came out of the car and was placed under arrest, Officer Romero searched Defendant and found a small bag of a white crystalline substance in Defendant's shirt pocket, which officers believed to be methamphetamine. Officers obtained a search warrant for the car where they recovered another bag of white crystalline substance and two glass pipes believed to be used to ingest methamphetamine. Defendant was charged and convicted by a jury for possession of methamphetamine, possession of drug paraphernalia, and tampering with evidence. This appeal followed.

**DISCUSSION**

**I.    Suppression of the Evidence**

**{4}** Defendant first argues that the district court erred in denying his motion to suppress the evidence of the pipes and methamphetamine because the evidence was obtained after a warrantless seizure, violating Defendant's rights under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

**{5}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "In reviewing a district court's ruling denying a motion to suppress, the appellate courts draw all reasonable inferences in favor of the ruling and defer to the district court's findings of fact as long as they are supported by substantial evidence." *State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180. We review the district court's legal conclusions de novo. *Paananen*, 2015-NMSC-031, ¶ 10. We note that the district court did not make any written factual findings and made only a few oral findings in this case. We presume that the district court believed the uncontradicted testimony of Officer Orozco, the only witness to testify at the suppression hearing. "Where the testimony is unclear, we will decide in favor of the district court's ruling, unless the ruling is wrong as a matter of law." *Murry*, 2014-NMCA-021, ¶ 15.

**{6}** Defendant argues that the motion to suppress should have been granted because (1) Defendant was seized when officers saw Defendant and commanded him to "get up," and (2) the seizure was unreasonable because the officers lacked individualized reasonable suspicion to expand the scope of the investigatory traffic stop. Defendant argues that since the seizure was unreasonable, his rights under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution were violated and any evidence discovered after he was seized should be suppressed.

## A. Defendant's Fourth Amendment Rights Were Not Violated

**{7}** The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "A search and seizure conducted without a warrant is unreasonable unless it is shown to fall within one of the exceptions to the warrant requirement." *State v. Diaz*, 1996-NMCA-104, ¶ 8, 122 N.M. 384, 925 P.2d 4. "Recognized exceptions to the warrant requirement include exigent circumstances, searches incident to arrest, inventory searches, consent, hot pursuit, open field, and plain view." *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. "The burden of showing reasonableness is on the [s]tate." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861.

**{8}** Defendant contends that he was seized when officers ordered him to get up from the floor of the third row passenger seat and that they did not have reasonable suspicion to seize him at the time they gave him this directive because they lacked individualized particularized suspicion that he was engaged in criminal activity. The State does not appear to disagree with Defendant's characterization of the time of Defendant's seizure, and we accept for purposes of this opinion that Defendant was seized at or before officers ordered him out of the car. *See, e.g., id.* ¶ 10 ("A law enforcement officer who stops a car to investigate a traffic violation seizes the occupants."); *State v. Portillo*, 2011-NMCA-079, ¶ 12, 150 N.M. 187, 258 P.3d 466 (same). The State argues instead that seizure was permissible because officer safety concerns raised exigent circumstances that obviated the need for a warrant.

**{9}**     Defendant asserts that his seizure was "unconstitutional and his subsequent search incident to arrest, and the search of the car" were therefore illegal. Specifically, Defendant claims that before police were permitted to order him to "get up" and get out of the car, they were required to have individualized suspicion that Defendant was engaged in criminal activity. We disagree.

**{10}**     The United States Supreme Court has long held that, "during a lawful traffic stop an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk." *Brendlin v. California*, 551 U.S. 249, 258 (2007) (citing *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997)). Balancing "the same weighty interest in officer safety" against the personal liberty of a passenger "already stopped by virtue of the stop of the car," *Wilson*, 519 U.S. at 413-414, the *Wilson* Court concluded that the "danger to an officer from a traffic stop is likely to be greater when there are passengers" in the car and, "the additional intrusion on the passenger is minimal." *Id.* at 414-15; *see Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (observing that "traffic stops are especially fraught with danger to police officers [and t]he risk of harm . . . is minimized if officers exercise unquestioned command of the situation" (internal quotation marks and citation omitted)). In this case, Officer Orozco testified that during the initial period of the traffic stop, he believed that there were only two people in the car: the driver and the passenger seated in the second row of seats. He explained that he became concerned when he discovered that Defendant had been hiding underneath clothing in the car during the entire stop,[1] at which point officers knocked on the window and tried to get Defendant to come out of the car. Under the Fourth Amendment of the United States Constitution, individualized suspicion was not required to order Defendant out of the car.

**{11}**     We note that once the officers were able to see Defendant's face, which occurred while he was still in the car, they recognized him, ran his name through dispatch, and were advised that he had active arrest warrants. It was during the search incident to Defendant's arrest pursuant to the active warrants that officers found methamphetamine on his person. *See State v. Rowell*, 2008-NMSC-041, ¶ 13, 144 N.M. 371, 188 P.3d 95 (recognizing search incident to arrest as an exception to the warrant requirement). We conclude that the officers' seizure of Defendant was not a violation of his Fourth Amendment rights and the district court did not err in denying Defendant's motion to suppress on these grounds.

## B.     Defendant's Rights Under Article II, Section 10 Were Not Violated

**{12}**     Defendant claims that, should we conclude that his rights under the Fourth Amendment were not violated, we must find that his rights under Article II, Section 10 of the New Mexico Constitution were infringed upon. In response, the State contends that

---

[1]We recognize that Defendant contends that he was not hiding on the floor of the third row of seats, but instead was sleeping and "sleeping in the back seat did not provide reasonable suspicion" for his seizure. While the district court did not make any findings as to whether Defendant was hiding or sleeping, we note that our standard of review requires that we resolve all factual issues in favor of the district court's ruling. *Murry*, 2014-NMCA-021, ¶ 15.

Defendant failed to preserve his claims under the New Mexico Constitution but, even if preserved, they are without merit. Assuming, without deciding whether Defendant properly preserved his state constitutional claims, we conclude that under the totality of the circumstances, Defendant's state constitutional rights were not violated when he was directed to "get up" and subsequently ordered out of the car by police.

**{13}**    Citing *State v. Gomez*, 1997-NMSC-006, ¶¶ 36-40, 122 N.M. 777, 932 P.2d 1, Defendant argues that, "under the New Mexico Constitution, automobiles [like homes] also provide a heightened expectation of privacy beyond that of a public place and are subject to the warrant requirement." Defendant is correct that our state courts interpret Article II, Section 10 of the New Mexico Constitution "more broadly than its federal counterpart, and specifically apply that broader protection to motorists." *State v. Bricker*, 2006-NMCA-052, ¶ 15, 139 N.M. 513, 134 P.3d 800 (alteration, internal quotation marks, and citation omitted); *see State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15, 130 N.M. 386, 25 P.3d 225 ("The extra layer of protection from unreasonable searches and seizures involving automobiles is a distinct characteristic of New Mexico constitutional law."); *Gomez*, 1997-NMSC-006, ¶¶ 39, 44 (rejecting federal automobile exception to warrant requirement in favor of greater protections under Article II, Section 10). Nonetheless, when considering the propriety of police actions under Article II, Section 10, "the key inquiry is still one of reasonableness, which depends on the balance between the public interest and the individual's interest in freedom from police intrusion upon personal liberty." *State v. Tapia*, 2018-NMSC-017, ¶ 46, 414 P.3d 332 (internal quotation marks and citation omitted).

**{14}**    To evaluate whether a search and seizure violates the protections of the New Mexico Constitution, we "evaluate, on the one hand, the degree to which the seizure intruded upon [the d]efendant's privacy and, on the other, the degree to which the seizure was needed for the promotion of legitimate governmental interests." *State v. Wright*, 2019-NMCA-026, ¶ 13, 458 P.3d 604 (alterations, internal quotation marks, and citation omitted); *see also Tapia*, 2018-NMSC-017, ¶ 46 (explaining that "courts judge the facts of each case by balancing the degree of intrusion into an individual's privacy against the interest of the government in promoting crime prevention and detection" (internal quotation marks and citation omitted)); *State v. Lovato*, 1991-NMCA-083, ¶ 25, 112 N.M. 517, 817 P.2d 251 ("[W]e look to whether the officer's actions were reasonable under the circumstances as juxtaposed against [the] defendants' right to be free of arbitrary interference by the officer.").

**{15}**    Applying the balancing test to Defendant's state constitutional claims, we conclude that the officers' actions were reasonable under the circumstances. Officer Orozco testified at the suppression hearing that he believed they had removed all of the occupants of the car when he noticed Defendant "hiding" inside the car. At trial, Officer Loomis explained that when Officer Orozco advised him that there was a third person in the car, they were concerned because "we had somebody we didn't know hiding in the [car] we had been dealing with for quite some time now. [We d]idn't know if the person was armed, what they were doing, or why they were concealing themselves. We just didn't know what was going on and that was an officer safety issue." The lapel camera

video of the stop shows that when officers realized Defendant was in the car, Officer Orozco initially shined his flashlight into the car, knocked on the window and directed Defendant to "get up."[2] When Defendant neither responded nor complied and forty-five seconds had passed, Officer Orozco opened the rear passenger side door slightly and again directed Defendant to "get up." After another ninety seconds passed with no response from Defendant, another officer went to the other side of the car, opened the driver's door and directed Defendant to "get up." Defendant then began to move around in the third row seat and both officers began repeatedly ordering him to "get up," "get [his] hands up," and "keep [his] hands where [officers] could see them." At this point, officers had drawn their weapons.

**{16}** We have previously held that, "[e]ven in routine traffic stops, police may adopt precautionary measures addressed to reasonable fears." *Lovato*, 1991-NMCA-083, ¶ 26. In this instance, officers were dealing with the presence of a person who, whether sleeping, as Defendant contends, or hiding, as officers surmised, had been concealed inside the car for a long period of time without officers' knowledge. Officers did not know the person's motives or intentions or whether he was armed. These facts, taken together, raise reasonable concerns for officer safety. Balancing the degree to which the seizure intruded upon Defendant's privacy when he was directed to "get up" and to "get his hands up" against the governmental interest in keeping officers safe while they perform their duties, we conclude that the officers' actions were objectively reasonable under the circumstances and Defendant's rights under Article II, Section 10 were not violated.

## II.     Sufficiency of the Evidence

**{17}** We now turn to Defendant's arguments that his convictions for possession of methamphetamine, possession of drug paraphernalia, and tampering with evidence were not supported by sufficient evidence.

**{18}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is defined as "such relevant evidence a reasonable mind might accept as adequate to support a conclusion[,]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted), and the "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the

---

2While the lapel camera video and testimony from Officer Loomis were not presented at the suppression hearing, we note that our review "is not limited to the record made on a motion to suppress," but may include a review of "the entire record to determine whether there was sufficient evidence to support the trial court's denial of the motion[.]" *State v. Johnson*, 1996-NMCA-117, ¶ 21, 122 N.M. 713, 930 P.2d 1165; *see also State v. Monafo*, 2016-NMCA-092, ¶ 10, 384 P.3d 134 (same).

evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted).

## A.      Conviction for Possession of Drug Paraphernalia

**{19}**    Defendant argues that there was insufficient evidence to convict him for possession of drug paraphernalia because (1) the pipes seized were broken and could not be considered paraphernalia, and (2) there was insufficient evidence that Defendant controlled the paraphernalia.

**{20}**    The jury was instructed that to find Defendant guilty for the charge of possession of drug paraphernalia, the jury must find that the State proved beyond a reasonable doubt each of the following elements of the crime:

> 1.      [D]efendant had two glass pipes in his possession;
>
> 2.      The pipes were intended to be used to ingest, inhale or otherwise introduce a methamphetamine to the human body; [and]
>
> 3.      This happened in New Mexico on or about the 28th day of April, 2016.

This jury instruction follows the Uniform Jury Instruction on possession of drug paraphernalia and the elements laid out in our state statute. *See* UJI 14-3107 NMRA; Section 30-31-23(A).

**{21}**    Defendant first argues that because the pipes were broken, the State failed to prove that Defendant intended to use these pipes to ingest, inhale, or otherwise introduce methamphetamine into the body. We note the record and Defendant's briefing are not sufficient to allow us to ascertain the extent to which the pipes were broken and whether the damage was such that they were unusable. Whether the pipes were so broken that they could not be used to ingest methamphetamine is a factual matter for the jury to consider in determining whether Defendant intended to use the pipes to ingest methamphetamine. In light of Officer Loomis's testimony that he recovered two pipes, that the pipes contained burnt methamphetamine residue, and that officers discovered the methamphetamine on Defendant and in the car in the area of the pipes, and disregarding all other contrary evidence and inferences, there was sufficient evidence for the jury to logically infer and conclude that the pipes were intended to ingest, inhale, or otherwise introduce methamphetamine into the body. *See State v. Bankert*, 1994-NMSC-052, ¶ 17, 117 N.M. 614, 875 P.2d 370 ("A conviction will be upheld if based upon a logical inference from circumstantial evidence."). To the extent

Defendant argues that this is a question of statutory interpretation, this argument was not raised below and the record is insufficient for us to review. *See State v. Jim*, 1988-NMCA-092, ¶ 3, 107 N.M. 779, 765 P.2d 195 ("It is [the] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal."). Therefore, we decline to address it.

**{22}** Next, Defendant contends that the State failed to prove that Defendant had constructive possession of the pipes, arguing that the State only provided evidence that the pipes were found in the vicinity of Defendant and that the driver and other passenger had equal access to the pipes. *See* UJI 14-3130 NMRA ("A person's presence in the vicinity of the substance or his [or her] knowledge of the existence or the location of the substance, is not, by itself, possession."). However, Defendant fails to acknowledge Officer Loomis's testimony that he saw Defendant reaching and grabbing the pipes and pushing them under the seat. Further, the lapel footage captures Officers Orozco and Loomis telling Defendant to stop reaching and pushing the pipes under the seat. Disregarding all other evidence and inferences to the contrary, the officers' testimony and exhibits are sufficient to support a reasonable jury's conclusion that Defendant had knowledge of the pipes and exercised control over them. *See State v. Phillips*, 2000-NMCA-028, ¶ 8, 128 N.M. 777, 999 P.2d 421 (recognizing that "[c]onstructive possession exists when the accused has knowledge of drugs or paraphernalia and exercises control over them" and that "[t]he accused's own conduct may afford sufficient additional circumstances for constructive possession"). Therefore, we hold that there was sufficient evidence for a reasonable jury to find Defendant guilty of possession of drug paraphernalia.

## B.      Conviction for Possession of Methamphetamine

**{23}** Defendant also contends that there was insufficient evidence to support his conviction for possession of methamphetamine. Defendant argues that the State failed to prove that the items seized from Defendant and the car were in fact methamphetamine, particularly because there was a discrepancy between the amount weighed by Officer Orozco and the forensics lab. Tracking the Uniform Jury Instruction and the elements in the statute for possession of a controlled substance, the jury was instructed that to find Defendant guilty of possession of methamphetamine, the jury must find that the State proved beyond a reasonable doubt each of the following elements of the crime:

1.      [D]efendant had methamphetamine in his possession;

2.      [D]efendant knew it was methamphetamine;

3.      This happened in New Mexico on or about the 28th day of April, 2016.

*See* UJI 14-3102 NMRA; Section 30-31-23(A).

**{24}** At trial, Officer Romero testified that he removed a clear plastic baggie from Defendant's shirt pocket that contained a white crystalline substance. Officer Orozco testified that after the officers obtained the search warrant and searched the car, he found another plastic bag wrapped in a napkin containing a white crystalline substance in the backseat, near where Defendant was discovered. Officer Orozco further testified that he secured both baggies and placed them into evidence The State also offered the expert testimony of Sara Holguin, a forensic scientist with the Department of Public Safety Forensic Crime Lab, who tested both bags and opined with scientific certainty that the two bag contained methamphetamine. To the extent Defendant asks this Court to examine the weight discrepancies of the methamphetamine, we do not re-examine or reweigh the factual determinations best left to the jury or consider contrary evidence. *See Chavez*, 2009-NMSC-035, ¶ 11. Nor do we reweigh the credibility of witnesses testifying about those discrepancies. *See State v. Nichols*, 2006-NMCA-017, ¶ 9, 139 N.M. 72, 128 P.3d 500 ("If evidence is in conflict, or credibility is at issue, we accept any interpretation of the evidence that supports the [district] court's findings." (alteration, internal quotation marks, and citation omitted)). In addition to the officers' and Ms. Holguin's testimony, the State admitted the two bags of methamphetamine and Officer Orozco's lapel footage into evidence. Therefore, we hold that there was sufficient evidence for the jury to find each element in the instruction and to find Defendant guilty for possession of methamphetamine.

## C.  Conviction for Tampering with Evidence

**{25}** Defendant challenges his conviction for tampering with evidence, arguing that the State did not provide sufficient evidence that Defendant was hiding the pipes or that he intended to tamper with evidence, and that any movement the officers noticed was Defendant's attempts at complying with the officers' orders. On the charge of tampering with evidence, the jury was instructed that to find Defendant guilty, it must find that the State proved beyond a reasonable doubt each of the following elements of the crime:

> 1.  [D]efendant hid methamphetamine and two glass pipes under the seat of a car;
>
> 2.  By doing so, [D]efendant intended to prevent the apprehension, prosecution, or conviction of himself for the crime of possession of methamphetamine.
>
> The instruction mirrors the Uniform Jury Instruction and our state statute. *See* UJI 14-2241 NMRA; Section 30-22-5.

**{26}** In this case, we hold that there was sufficient evidence to support Defendant's conviction for tampering with evidence. Officer Orozco testified that after the officers found Defendant in the backseat, they directed him several times to get out of the car and show his hands. Rather than comply, Defendant remained on the floor of the car and continued to reach under the seat. Officer Loomis testified that he could see the two pipes on the floor next to Defendant and that Defendant grabbed the pipes and pushed

them underneath the seat. Further, Defendant's arguments that his actions were not intended to tamper with evidence but instead were attempts at complying with the officers commands asks us to reweigh the evidence, which we will not do. Therefore, disregarding the contrary evidence, we hold that Defendant's conviction for tampering with evidence was supported by sufficient evidence.

**CONCLUSION**

**{27}** For the foregoing reasons, we affirm.

**{28}  IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KRISTINA BOGARDUS, Judge**