This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

       Plaintiff-Appellee,

**v.**                                    **No. A-1-CA-35615**

**DIANA RODRIGUEZ,**

       Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett H. Baur, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

{1}     Defendant Diana Rodriguez appeals from her judgment and sentence entered after her guilty plea to possession of a controlled substance. Defendant argues that the district court improperly denied her motion to suppress evidence seized from her after a traffic stop because: (1) the officer unlawfully expanded the scope of the investigation, and (2) her consent to the search was involuntary. Defendant additionally argues that the district court erred by denying her motion to dismiss on compulsory joinder grounds. We hold that the scope of the investigation was lawfully expanded and that Defendant voluntarily consented to the search. We further hold that Defendant waived her right to appeal the district court's denial of her motion to dismiss. As such, we affirm.

**BACKGROUND**

{2}     On December 31, 2014, Defendant's vehicle came to Deputy Adam Lem's attention because of an obscured registration sticker. After running the license plate, Deputy Lem discovered that the vehicle's registered owner had a suspended driver's license. Deputy Lem initiated a traffic stop, Defendant pulled the vehicle over, and Deputy Lem spoke with Defendant and her passenger Eric Arzate. Deputy Lem learned that the vehicle belonged to Arzate's brother. Neither Defendant nor Arzate, however, possessed a valid driver's license, so Deputy Lem offered to perform a field release of the vehicle after a tow truck arrived. During this exchange, Defendant stated

that she and Arzate lived "right around the corner." Deputy Lem testified that Defendant began to sweat profusely about halfway through the conversation, that both Defendant and Arzate searched aimlessly for registration and insurance information (which they were unable to find), that Defendant stumbled and stuttered in her speech, and that Defendant was more nervous than the normal motoring public.

{3} As Deputy Lem returned to his unit, Arzate exited the passenger's side of the vehicle. Deputy Lem saw Arzate throw something back toward the vehicle, then Arzate began to leave. Around this same time, Deputy Lem discovered that Arzate had outstanding felony warrants. Deputy Lem shouted for Arzate to stop, but Arzate continued to run and disappeared into a nearby mobile home park. Deputy Lem asked Defendant where Arzate had gone. Defendant answered that Arzate was going to the bathroom. Deputy Lem went back to his unit and called for backup, communicating information about Arzate. Defendant then opened her door, stepped out of the vehicle with her purse, and attempted to leave. Deputy Lem yelled from his unit for her to stay in her vehicle and she complied.

{4} Deputy Lem returned to the vehicle and questioned Defendant about where she and Arzate lived. Defendant was evasive in her answers and claimed not to know their address. This line of questioning and evasion lasted approximately two minutes. Defendant ultimately stated that they were staying "kinda far" away on Riverside.

3

Deputy Lem described Defendant as even more nervous at this point and unwilling to make eye contact. Deputy Lem again asked Defendant why Arzate ran. Defendant claimed not to know, but then stated that it may have been due to a bench warrant for nonappearance at a court date.

{5}   Deputy Lem then asked Defendant to step out of the vehicle. Clutching a large purse, Defendant exited the vehicle, whereupon Deputy Lem asked Defendant whether she had anything on her person, to which she replied, "Nope." Deputy Lem went on to ask, "Anything illegal?" Defendant replied, "Nope." Deputy Lem then asked "Any narcotics or anything?" Defendant replied, "No." Deputy Lem testified that based on all the indicators, he requested to search Defendant's purse, to which she replied, "Sure." During the search of Defendant's purse, Deputy Lem found marijuana and approximately one gram of methamphetamine. When Defendant was told she was being arrested, she produced a baggy of more than 40 grams of methamphetamine.

{6}   Defendant was charged with one count of trafficking methamphetamine (by possession with intent to distribute), in violation of NMSA 1978, Section 30-31-20 (2006), as well as various motor vehicle violations that were later dismissed and prosecuted separately in magistrate court. Defendant moved to suppress evidence obtained during the traffic stop, alleging violations of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

4

The district court held a suppression hearing at which only Deputy Lem testified and the parties stipulated to the admission of the dash cam audio-video recording of the traffic stop. After taking the officer's testimony and reviewing the dash cam recording, the district court denied Defendant's motion to suppress. In denying Defendant's motion to suppress, the district court found that Defendant was very nervous, stuttering, fumbling through paperwork, sweating profusely, avoiding eye contact, evasive, not providing her address, and repeatedly trying to leave. The district court also found that Arzate "tossed something away" after he exited the vehicle and that Arzate ran "away and would not come back." The district court held that Deputy Lem acquired reasonable suspicion of additional criminal activity, specifically drug activity.

**{7}** Defendant also moved to dismiss the trafficking charge on compulsory joinder grounds, arguing that the State violated the Rules of Criminal Procedure by failing to prosecute all the crimes arising out of the stop together. The district court denied this motion. Defendant entered into a conditional plea agreement in which she pled guilty to possession of a controlled substance, in violation of NMSA 1978, Section 30-31-23(E) (2011), and reserved the right to appeal the denial of her motion to suppress. Defendant did not reserve her right to appeal the denial of her motion to dismiss.

**DISCUSSION**

**I.      The District Court Did Not Err in Denying the Motion to Suppress**

{8}      Because we hold that Deputy Lem's expansion of his investigation to matters outside the initial reason for the stop was supported by reasonable suspicion and Defendant's consent to search her purse was voluntary, we affirm the district court's denial of Defendant's motion to suppress.

**A.      Standard of Review**

{9}      "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "[W]e first look for substantial evidence to support the [district] court's factual finding, with deference to the . . . court's review of the testimony and other evidence presented[.]" *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. "[W]e then review de novo the [district] court's application of law to the facts to determine whether the search or seizure were reasonable. The burden to show reasonableness is on the [s]tate. Our review of a district court's determination of whether reasonable suspicion existed is de novo based on the totality of the circumstances." *Id.* (citations omitted).

**B.      Reasonable Suspicion Analysis**

{10}      Defendant argues that Deputy Lem lacked reasonable suspicion to expand the scope of his investigation in violation of Article II, Section 10 of the New Mexico

Constitution. Defendant properly preserved her state constitutional argument below. Given Defendant's reliance on the New Mexico Constitution, as well as the divergence of search and seizure jurisprudence under Article II, Section 10 and the Fourth Amendment, we evaluate this case only under Article II, Section 10. *See Leyva*, 2011-NMSC-009, ¶ 3 (finding that "Article II, Section 10 provides greater protections against unreasonable searches and seizures than does the Fourth Amendment"); *State v. Olson*, 2012-NMSC-035, ¶ 10, 285 P.3d 1066 (addressing only broader protections of Article II, Section 10, where New Mexico Constitution provides more expansive protections than the United States Constitution).

{11}    A traffic stop and the attendant detention of its occupants is a "seizure" for purposes of Article II, Section 10 of the New Mexico Constitution. *See State v. Duran*, 2005-NMSC-034, ¶ 22, 138 N.M. 414, 120 P.3d 836, *overruled on other grounds by Leyva*, 2011-NMSC-009, ¶ 17. As set forth in *Duran*, the proper inquiry under Article II, Section 10 is that "all questions asked by police officers during a traffic stop must be analyzed to ensure they are reasonably related to the initial justification for the stop or are supported by reasonable suspicion." 2005-NMSC-034, ¶ 35. "An officer may expand the scope of the search or seizure during the investigatory stop only where the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot." *Id.* ¶ 23 (internal quotation marks and citation omitted).

"Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *Id.* (internal quotation marks and citation omitted). "In determining whether reasonable suspicion exists, we examine the totality of the circumstances." *Id.* (internal quotation marks and citation omitted).[1]

{12}   Defendant does not challenge the lawfulness of the initial stop, and the State does not argue that grounds other than independent reasonable suspicion existed for expanding the stop. *See Olson*, 2012-NMSC-035, ¶ 11 ("Under *Duran*, an officer may ask questions unrelated to the traffic stop so long as those questions are 'supported by independent reasonable suspicion, for reasons of officer safety, or if the interaction has developed into a consensual encounter.'" (quoting *Leyva*, 2011-NMSC-009, ¶ 55)). Thus, the issue before us is whether Deputy Lem's questions about matters unrelated to the obstruction of the registration sticker and the licensure offenses were supported by reasonable suspicion.

{13}   Defendant first argues that questions relating to Arzate's motivations for fleeing impermissibly went beyond the scope of the stop. At the time of these questions, Arzate had fled, Deputy Lem knew Arzate had outstanding felony warrants, and Deputy Lem had called other officers to the scene to assist in locating Arzate. Deputy

---

[1]The State spends a substantial portion of its brief discussing standards of review and citing extensively to out-of-state case law. Because we determine that Deputy Lem's inquiries were lawful within the existing rubric of Article II, Section 10 jurisprudence, we need not address the out-of-state case law cited by the State.

8

Lem's inquiry about Arzate's motivations and his whereabouts were responsive to the evolving circumstances of the stop, which now included the flight of Defendant's passenger. These circumstances, "while not rising to the level of reasonable suspicion of other criminal activity" on the part of Defendant, permitted Deputy Lem to ask limited questions about Arzate's motivations. *See Duran*, 2005-NMSC-034, ¶ 37. Deputy Lem acted properly as he employed "graduated response[s] to the evolving nature of the stop." *See State v. Funderburg*, 2008-NMSC-026, ¶¶ 28-29, 144 N.M. 37, 183 P.3d 922. We, therefore, conclude that Deputy Lem's limited questions "were fairly responsive to the emerging tableau" and "reasonably related in scope to the circumstances of the case." *Id.* ¶ 27 (internal quotation marks and citation omitted).

{14} Defendant next argues that Deputy Lem's questions about whether Defendant had anything illegal on her, such as narcotics, and seeking permission to search Defendant's purse impermissibly expanded the scope of the stop. In making this argument, Defendant contends that Deputy Lem impermissibly relied on the actions of Arzate and on her nervousness.

{15} Defendant's suggestion that law enforcement and reviewing courts cannot consider the actions of a defendant's passenger in assessing reasonable suspicion is incorrect. Indeed, our Court addressed this issue a number of years ago in *State v. Williamson*, 2000-NMCA-068, 129 N.M. 387, 9 P.3d 70. In *Williamson*, the defendant

9

driver exhibited some signs of impairment, but they were insufficient to arrest him for driving while intoxicated. 2000-NMCA-068, ¶ 4. At the same time, an illegal substance was found on passenger's person. *Id.* This Court held that the officer reasonably expanded the scope of the traffic stop to question the defendant about illegal substances and ask for consent to search his person. *Id.* ¶ 10. This reasonable suspicion was based in part on factors individualized to the defendant and in part on the passenger's possession of drugs. *Id.* ¶ 14.

{16}     Defendant cites to *State v. Patterson*, 2006-NMCA-037, 139 N.M. 322, 131 P.3d 1286, for the proposition that the behavior of vehicle occupants cannot be attributed to a defendant driver. *Patterson* is distinguishable. Unlike the case before us, "[t]he only fact concerning [the d]efendant . . . [in *Patterson*] was that he was present in the car" where criminal activity was occurring. *Id.* ¶ 28. Our Court held that "mere presence was not sufficient to create an individualized suspicion that [the d]efendant . . . was violating the . . . law." *Id. Patterson* merely stands for the proposition that when an officer provides no articulable facts that give rise to individualized suspicion as to the defendant, a general concern based on proximity to illegal activity is insufficient. *See id.* Such is not the case here.

{17}     Defendant finally contends that the only fact—other than Arzate's flight—supporting suspicion toward her was her nervousness. While nervousness

*alone* may be insufficient to form the basis of reasonable suspicion, we must look at the totality of the circumstances. *See id.* ¶ 29; *State v. Martinez*, 2018-NMSC-007, ¶ 12, 410 P.3d 186 ("On appeal, we must review the totality of the circumstances and must avoid reweighing individual factors in isolation."). In doing so, we find that mere nervousness was not the basis for Deputy Lem's expansion of his investigation. Deputy Lem described Defendant as more nervous than the normal motoring public, sweating profusely notwithstanding the cold weather, and avoiding eye contact. The district court noted that these behaviors were indicative of drug activity.[2] Deputy Lem articulated that his suspicion toward Defendant developed over the course of the traffic stop based on all the foregoing factors, as well as: (1) Arzate's flight from the scene after throwing something back toward the vehicle where Defendant sat; (2) Defendant's own attempt to leave the scene; (3) Defendant's inconsistent and evasive answers regarding where she resided; and (4) Defendant's clutching of her purse when she got out of the vehicle. These facts support individualized suspicion as to

---

[2]We note that Deputy Lem never testified to the conclusion that the way Defendant was acting was consistent with drug use or drug activity. *See Duran*, 2005-NMSC-034, ¶ 40 (noting that "[p]olice officers should always explain with specificity how their training and experience led them to draw their conclusions when testifying at a hearing on a motion to suppress"). Defendant, however, does not raise this as a ground for error on appeal. Regardless, Deputy Lem's "testimony, while not perfect, sufficiently articulated the facts that gave him reasonable suspicion to expand the scope of the stop." *Id.*; *see also Leyva*, 2011-NMSC-009, ¶ 59 ("Reasonable suspicion is measured by an objective standard based on the totality of the circumstances.").

Defendant, well beyond her mere proximity to her fleeing passenger and her own nervousness.

{18} "All of these facts, considered in the totality of the circumstances, gave [Deputy Lem] reasonable suspicion that criminal activity may have been afoot." *Duran*, 2005-NMSC-034, ¶ 38. As such, Deputy Lem permissibly expanded the scope of the stop by asking Defendant whether she had anything illegal, including narcotics, and requesting consent to search Defendant's purse. *See State v. Portillo*, 2011-NMCA-079, ¶ 23, 150 N.M. 187, 258 P.3d 466 (holding that officer "could ask questions about narcotics and weapons only if he had developed independent, reasonable suspicion giving rise to such questions"); *see also Duran*, 2005-NMSC-034, ¶ 38 (finding reasonable suspicion for drug investigation, the court considered, among other things, the defendant's nervousness and conflicting accounts of travel itinerary); *State v. Pacheco*, 2008-NMCA-131, ¶¶ 16-17, 145 N.M. 40, 193 P.3d 587 (same); *Funderburg*, 2008-NMSC-026, ¶¶ 32-33 (considering the passenger's possession of drugs and drug paraphernalia in lawfully requesting to search the defendant's vehicle); *State v. Harbison*, 2007-NMSC-016, ¶ 18, 141 N.M. 392, 156 P.3d 30 (finding reasonable suspicion, the court considered the defendant's flight from area where another individual had just completed a drug sale); *Williamson*, 2000-NMCA-068, ¶

12

14 (finding reasonable suspicion, the court considered the defendant's signs of impairment in connection with the passenger's possession of illegal narcotics).

{19} Additionally, as found by the district court, Deputy Lem's inquiries did not impermissibly extend the duration of the stop. *See Duran*, 2005-NMSC-034, ¶ 35 ("We believe that [the reasonable suspicion] determination must also include an examination of both the length of the detention and the manner in which it is carried out. The length of the detention should be reasonably limited to the time it takes to complete the underlying justification for the stop." (internal quotation marks and citation omitted)). Because of the need to wait for a tow truck, as well as the concurrent investigation into Defendant's fleeing passenger, the duration of the stop already was permissibly lengthened beyond the scope of a usual traffic stop.

{20} Because we determine that Deputy Lem had reasonable suspicion to inquire about illegal items, including narcotics, and to request consent to search, Defendant's argument that her consent to search was tainted by prior illegality is without merit. *See Williamson*, 2000-NMCA-068, ¶ 17; *Funderburg*, 2008-NMSC-026, ¶ 33 ("Because the detention was reasonable, [officer's] request for consent was lawful.").

**C. Voluntariness of Defendant's Consent to Search**

{21} Defendant additionally argues that her consent to the search of her purse was involuntary. Defendant specifically argues that she could not voluntarily consent to

13

the search because she was "seized" at the time consent was sought. The cases Defendant cites for this proposition are inapposite and the well-settled law is to the contrary. "The fact that a suspect has been subjected to arrest or detention does not automatically invalidate a subsequent consent to search." *State v. Mann*, 1985-NMCA-107, ¶ 30, 103 N.M. 660, 712 P.2d 6. Indeed, "a person may validly consent to a search even though the consent is given while he is in custody . . . the fact of custody does not inherently render the consent invalid." *Id.* (omission in original) (internal quotation marks and citation omitted). "To determine the voluntariness of consent, we examine whether the consent was specific and unequivocal, and whether the consent was the result of duress or coercion, in light of the presumption disfavoring the waiver of constitutional rights." *State v. Shaulis-Powell*, 1999-NMCA-090, ¶ 8, 127 N.M. 667, 986 P.2d 463.

{22}     "The voluntariness of consent is a factual question in which the [district] court must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary." *State v. Davis*, 2013-NMSC-028, ¶ 10, 304 P.3d 10 (internal quotation marks and citation omitted). "In conducting such a review, the question is whether the [district] court's decision is supported by substantial evidence, not whether the trial court could have reached a different conclusion." *Id.* (alterations, internal quotation marks, and citation omitted). The uncontroverted

evidence in this case is that Deputy Lem requested consent to search Defendant's purse and Defendant said, "Sure." At that time, one other officer was on scene, peering into the vehicle. No factors indicate coercion. *See id.* ¶ 23 ("Specific factors indicating coercion include the use of force, brandishing of weapons, threat of violence or arrest, lengthy and abusive questioning, deprivation of food or water and promises of leniency in exchange for consent."). Substantial evidence supports the district court's finding that Defendant "explicitly and unambiguously gave the [d]eputy consent to search her purse[,]" and that "[t]here [was] no evidence of duress or coercion."

## II. The Denial of Defendant's Motion to Dismiss is Not Preserved

**{23}** Finally, Defendant argues that the district court erred in denying her motion to dismiss based on compulsory joinder. Defendant entered into a conditional plea in this case, reserving only the suppression issue addressed above; the conditional plea did not reserve the compulsory joinder issue. As such, Defendant waived her right to appeal the district court's denial of her motion to dismiss by pleading guilty and failing to reserve the issue in her conditional plea agreement. *See State v. Morgan*, 2016-NMCA-089, ¶ 29, 382 P.3d 981.

## CONCLUSION

**{24}** For all the foregoing reasons, we affirm the district court's denials of Defendant's motion to suppress and Defendant's motion to dismiss.

**{25}** **IT IS SO ORDERED.**

_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**STEPHEN G. FRENCH, Judge**