# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: January 22, 2019

**NO. A-1-CA-35414**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JENNIFER SIMPSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**GALLEGOS, Judge Pro Tempore.**

**{1}**  Defendant Jennifer Simpson appeals from the district court's denial of her motion to suppress evidence that she contends was obtained as the result of an illegal seizure in violation of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Following a hearing resulting in the denial of her suppression motion, Defendant entered a conditional guilty plea to driving while intoxicated (DWI) and driving on a revoked license, reserving her right to appeal the denial of her motion. Defendant contends that she was seized without reasonable suspicion when she stopped her moving vehicle in response to a police officer's tap on the vehicle's window and that the evidence discovered as a result of her illegal detention must be suppressed. We determine that the police officer's initial contact with Defendant was consensual. Accordingly, we affirm the district court's denial of Defendant's suppression motion.

**BACKGROUND**

**{2}**  On June 17, 2015, in Farmington, New Mexico, Mark Kennedy, a park ranger and animal control officer, was going about his evening duties at a city park complex. At around 11:00 p.m., he noticed a car drive into a nearby parking lot. The parking lot was park property, partially paved, and poorly lit. The driver of the

car—later identified as Defendant—parked and turned off her lights. Officer Kennedy found this suspicious because, while not posted as such, the park's official closing time was 10:00 p.m. He reported the suspicious vehicle to dispatch. Farmington Police Officer Nick Adegite arrived in uniform and in a marked patrol car at approximately 11:20 p.m. to investigate Officer Kennedy's suspicious vehicle report. He entered the parking lot and parked near Defendant's stationary vehicle. Officer Adegite at no time engaged his vehicle's emergency lights.

{3}     As Officer Adegite approached Defendant's vehicle on foot, Defendant turned on her lights and started to drive away. Officer Adegite then reached out and tapped on the window of Defendant's moving vehicle. Defendant stopped and rolled down her window. Officer Adegite quickly detected the strong odor of alcohol, which led to a DWI investigation and Defendant's eventual arrest. Ultimately, Defendant entered a conditional guilty plea, reserving the right to appeal the district court's denial of her motion to suppress.

**DISCUSSION**

{4}     On appeal, Defendant argues that she was illegally seized when she stopped her vehicle to comply with Officer Adegite's signal to stop because the police officer lacked sufficient reasonable suspicion to make an investigatory stop. For the reasons that follow, we hold that Officer Adegite's tap on Defendant's car window, without more, constituted only a consensual encounter between the

officer and Defendant. Therefore, there was no seizure at the time Defendant rolled down her window and Officer Adegite observed a strong odor of alcohol emanating from inside the vehicle.

**I.      Standard of Review**

**{5}**      In reviewing a district court's ruling denying a motion to suppress, this Court draws all reasonable inferences in favor of the ruling and defers to the district court's findings of fact as long as they are supported by substantial evidence. *State v. Jason L.*, 2000-NMSC-018, ¶¶ 10-11, 129 N.M. 119, 2 P.3d 856. If the district court does not state on the record a disbelief of uncontradicted testimony, we "presume the court believed all uncontradicted evidence." *Id.* ¶ 11. "When a seizure occurred and whether it was based on reasonable suspicion are mixed questions of fact and law because they involve the mixture of facts and evaluative judgments." *State v. Eric K.*, 2010-NMCA-040, ¶ 14, 148 N.M. 469, 237 P.3d 771. We evaluate mixed questions de novo. *Id.*

**II.      The Initial Encounter Was Consensual and Did Not Constitute a Seizure**

**{6}**      Investigatory detentions and arrests are considered seizures for the purposes of the Fourth Amendment's protection against unreasonable searches and seizures. *Jason L.*, 2000-NMSC-018, ¶ 14. While both the State and Defendant acknowledge that Defendant was seized by Officer Adegite at some point during the encounter,

they disagree as to when exactly the seizure occurred. Defendant contends that she was seized when she stopped her vehicle in response to Officer Adegite's tap on her window. The State argues that Defendant was not seized until sometime after Officer Adegite observed signs of intoxication, with all prior events being consensual in nature. "The point at which the seizure occurs is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop." *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30.

{7} Under *United States v. Mendenhall*, 446 U.S. 544 (1980), "a person is seized within the meaning of the [F]ourth [A]mendment when, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *State v. Lopez*, 1989-NMCA-030, ¶ 4, 109 N.M. 169, 783 P.2d 479. Whether a defendant has been seized "is a case-by-case determination balancing the intrusion into individual privacy against the [s]tate's interest in crime prevention, looking at the totality of the circumstances." *State v. Murry*, 2014-NMCA-021, ¶ 12, 318 P.3d 180.

{8} The police do not need justification to approach a person and ask that person questions, so long as the actions of the officers do not "convey a message that compliance with their requests is required." *Jason L.*, 2000-NMSC-018, ¶ 14 (internal quotation marks and citation omitted). Police contact is consensual so

long "as a reasonable person would feel free to disregard the police and go about his business[] or to decline the officers' requests or otherwise terminate the encounter." *State v. Scott*, 2006-NMCA-003, ¶ 18, 138 N.M. 751, 126 P.3d 567 (internal quotation marks and citation omitted). "However, if an officer conveys a message that an individual is not free to walk away, by either physical force or a showing of authority, the encounter becomes a seizure under the Fourth Amendment." *State v. Gutierrez*, 2008-NMCA-015, ¶ 9, 143 N.M. 522, 177 P.3d 1096 (internal quotation marks and citation omitted). Additionally, for purposes of the Fourth Amendment, "a seizure based on a show of authority, as opposed to physical force, requires '*submission* to the assertion of authority.' " *Harbison*, 2007-NMSC-016, ¶ 13 (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). However, in *State v. Garcia*, 2009-NMSC-046, ¶ 35, 147 N.M. 134, 217 P.3d 1032, our Supreme Court held that our State Constitution does not require submission to authority, and instead, the "free-to-leave" test articulated in *Mendenhall* provides the standard for determining whether a person is seized for purposes of Article II, Section 10 of the New Mexico Constitution. We decide this appeal on state constitutional grounds, applying the *Mendenhall* "free-to-leave" test.

{9}     In determining whether a person was seized, "we evaluate (1) the circumstances surrounding the contact, including whether police used a show of

5

authority; and (2) whether the circumstances of the contact reached such a level of accosting and restraint that a reasonable person would have believed he or she was not free to leave." *Scott*, 2006-NMCA-003, ¶ 17 (internal quotation marks and citation omitted). The first of these determinations is a fact-based inquiry, which we review for substantial evidence. *Jason L.*, 2000-NMSC-018, ¶ 19. The second is a legal inquiry wherein we apply those facts to the law de novo. *Id.*

**A.      Circumstances Surrounding the Contact**

**{10}**      Evaluating the circumstances surrounding the police-citizen contact in this case, we initially observe that the district court did not make any factual findings, save for noting that Officer Adegite did not employ lights or sirens or otherwise make a show of force. A lack of factual findings "is a regular occurrence when we review decisions on motions to suppress evidence in criminal cases." *State v. Gonzales*, 1999-NMCA-027, ¶ 11, 126 N.M. 742, 975 P.2d 355. In these circumstances, we presume that the district court believed the uncontradicted testimony of the two witnesses, Officer Kennedy and Officer Adegite. *See Murry*, 2014-NMCA-021, ¶ 10 ("If the district court does not state on the record a disbelief of uncontradicted testimony, we presume the court believed all uncontradicted evidence." (internal quotation marks and citation omitted)).

**{11}**      As indicated, Officer Adegite arrived after 11:00 p.m. at a poorly lit and partially paved parking lot behind a municipal public park to investigate a report of

a suspicious vehicle. He was in uniform and entered the parking lot in a marked patrol vehicle without his emergency equipment activated. Other than Defendant's vehicle, the parking lot was empty and there were no other vehicles or members of the public in the vicinity.

{12}     Officer Adegite parked his patrol vehicle in the parking lot. It is unclear from the record how close Officer Adegite parked to Defendant's car or whether Defendant saw the police vehicle as it entered the parking lot. Upon exiting his patrol car, Officer Adegite approached Defendant's vehicle on foot. As he neared the vehicle, Defendant began to drive away. Officer Adegite then tapped on the window of Defendant's moving vehicle (how slowly the vehicle was moving is also unclear from the record), without making any other statement, gesture, or signal. Defendant stopped her vehicle and rolled down the window. It was at that point that Officer Adegite could detect an odor of alcohol coming from inside the vehicle, ultimately leading to Defendant's arrest for DWI.

**B.     A Reasonable Person Would Have Felt Free to Leave**

{13}     The initial encounter between Officer Adegite and Defendant entailed little more than the officer's approach toward Defendant's vehicle and his ensuing tap on the car window. The linchpin of Defendant's suppression issue is whether this conduct constituted a "show of [police] authority" at such a level of "accosting and restraint" that it would have conveyed the message to Defendant that she was not

free to leave. *Scott*, 2006-NMCA-003, ¶ 17. Three factors should be considered in determining whether a reasonable person would feel free to walk, or more accurately here, to drive away from an encounter with police: "(1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Jason L.*, 2000-NMSC-018, ¶ 15 (internal quotation marks and citation omitted). Examples of circumstances that might indicate a seizure would be "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Lopez*, 1989-NMCA-030, ¶ 3 (quoting *Mendenhall*, 446 U.S. at 554).

{14} Clearly, none of the circumstances enumerated in *Lopez* are present in this case. That is, although Officer Adegite was in uniform and drove into the parking lot in his marked patrol vehicle, there is no evidence that he displayed a weapon, physically touched Defendant, or used language or tone of voice that would indicate that compliance might be compelled. Further, as the district court found, Officer Adegite did not employ lights or sirens or otherwise make a show of force. He simply tapped on Defendant's window.

{15} A police officer's conduct in tapping on the window of a *parked* car, without more, is typically not enough to constitute a seizure. In *County of Grant v. Vogt*,

8

2014 WI 76, ¶¶ 4-5, 356 Wis. 2d 343, 850 N.W.2d 253, the officer observed the defendant park in a lot next to a closed park. The officer parked his squad car behind but not blocking the defendant's stationary and idling vehicle, approached the vehicle on foot, and "rapped" on the window. *Id.* ¶¶ 6-7. Although the officer was in uniform, he did not activate his vehicle's overhead lights. *Id.* A majority of the Wisconsin Supreme Court held that this was not a seizure, concluding that "[a]lthough it may have been [the defendant's] social instinct to open his window in response to [the deputy's] knock, a reasonable person in [the defendant's] situation would have felt free to leave." *Id.* ¶ 53. This Court reached a similar holding in an unpublished opinion. *See Padilla v. Motor Vehicle Div.*, No. 30,646, mem. op., at *2 (N.M. Ct. App. Aug. 14, 2012) (non-precedential) ("[W]e conclude that no seizure occurred where the officer parked his marked patrol unit fifteen feet away from [the d]efendant's vehicle, approached [the d]efendant's vehicle on foot, in uniform and displaying his badge, and tapped on the vehicle's window."). Likewise, courts in other jurisdictions have concluded that tapping on the window of a parked vehicle does not, in and of itself, constitute a seizure. *See, e.g.*, *Rutledge v. State*, 28 N.E.3d 281, 289 (Ind. Ct. App. 2015) (determining that a police officer who parked near the defendant's vehicle, approached on foot, and then "tapped on the driver side window and attempted to speak with [the defendant in the parked vehicle]" had not effectuated a seizure because "the degree of

9

intrusion was minor"). *But see State v. Patterson*, 2005 ME 26, ¶¶ 15-16, 868 A.2d 188 (concluding that tapping on the window of a parked car, combined with a vocal request to open the window, constituted a seizure).

{16} Consistent with this line of authority, Professor LaFave notes in his search and seizure treatise that "if an officer merely walks up to a person standing or sitting in a public place (or, indeed, who is seated in a vehicle located in a public place) and puts a question to him, this alone does not constitute a seizure." 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 9.4(a), at 574-77 (5th ed. 2012) (footnotes omitted). He explains that "[t]he result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation." *Id.* at 594. He goes on to state that, in order to make a basic inquiry, an officer may tap on the window of a car to get the person's attention without transforming the encounter into a seizure. *Id.* at 594-95.

{17} The communicative effect of an officer's tap or knock on a vehicle's window is to gain the attention of the occupant(s) of the vehicle; it does not necessarily indicate "that compliance with the officer's request might be compelled[,]" *Lopez*, 1989-NMCA-030, ¶ 3 (internal quotation marks and citation omitted), nor does it communicate that a person is otherwise not free to leave. *Cf. Murry*, 2014-NMCA-021, ¶ 24 (holding that a reasonable innocent person

10

receiving an order to open his car door from a uniformed police officer "would perceive that he was not free to disregard the order, let alone free to leave"). Moreover, "[t]he critical factor is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it occurred between two ordinary citizens." *Garcia*, 2009-NMSC-046, ¶ 38 (internal quotation marks and citation omitted). Gaining the attention of a vehicle occupant by tapping on the vehicle's window would generally be perceived as nonoffensive contact if it occurred between two ordinary citizens.

{18}    What makes this case different, at least in Defendant's view, is that her vehicle was in motion at the time Officer Adegite tapped on the window. Defendant likens this case to a traffic stop. *See State v. Funderburg*, 2008-NMSC-026, ¶ 13, 144 N.M. 37, 183 P.3d 922 (stating that "[w]hen an officer stops an automobile and detains the occupants for an investigatory stop, the officer has effected a seizure" (internal quotation marks and citation omitted)).[1] As a general rule, a traffic stop constitutes a seizure. *See id.*; *see also Delaware v. Prouse*, 440

---

[1]We note that Defendant did not make this specific "traffic stop" argument at trial. However, Defendant did contend that the window tap caused her to stop her vehicle, and she presented the necessary evidence to support the legal principle. Therefore, we will consider the argument on its merits. *See State v. Paananen*, 2015-NMSC-031, ¶ 11, 357 P.3d 958 (determining that an issue was preserved where the state sufficiently asserted the issue and adduced the evidence necessary to support the legal principle, and where the defendant had an opportunity to respond).

U.S. 648, 653 (1979) (holding that "stopping an automobile and detaining its occupants constitute a seizure" under the Fourth Amendment, even where "the purpose of the stop is limited and the resulting detention quite brief" (internal quotation marks and citation omitted)). However, we are not persuaded that we are dealing with a traffic stop in this case.

{19}     That is to say, the circumstances of Officer Adegite's approach—on foot—toward Defendant's vehicle as it was idling in the parking lot, followed by a tap on the window as it started pulling away, appear to be more akin to an encounter with a pedestrian or with the occupant of a parked car than to a typical traffic stop. *See United States v. Adegbite*, 846 F.2d 834, 838 (2d Cir. 1988) (holding that where a vehicle "had barely started [driving] in a parking lot, moved only fifteen to twenty yards, and was waved to a halt by DEA agents on foot," the situation was "more analogous to the cases of pedestrians and parked cars to which the *Mendenhall* seizure test is applied[,]" and recognizing that the "normal circumstances of a vehicle stop," which "generally involve abundant displays of authority, including police uniforms, sirens and flashing lights, and signals to pull off the highway[,]" were not present). Given the conspicuous absence of the typical displays of authority attendant to a traffic stop—sirens, flashing lights, signals to pull off the highway—we decline to treat this case as one involving a typical traffic stop.

12

{20} Defendant also asserts that a reasonable person would have felt compelled to stop pursuant to NMSA 1978, Section 30-22-1(C) (1981), which prohibits resisting, evading, or obstructing an officer. The plain language of Section 30-22-1(C) prohibits "willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer *in an appropriately marked police vehicle*[.]" (Emphasis added.) In this case, along with the lack of typical displays of authority attendant to a traffic stop mentioned above, we also note that Officer Adegite was not in his police vehicle when he approached Defendant's vehicle and tapped on the window. Defendant has not provided us with any argument or authority as to how Section 30-22-1(C) applies here when Officer Adegite was not *in* his police vehicle. Where a party cites no authority to support an argument, we may assume no such authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329.

{21} In the end, we view the fact that Defendant's vehicle was moving as but one of the myriad factors to be evaluated in our totality of the circumstances analysis. *See Michigan v. Chesternut*, 486 U.S. 567, 572-73 (1988) (eschewing bright-line tests and describing the *Mendenhall* free-to-leave test as "necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation"). In

this case, Officer Adegite, alone, in uniform, and on foot, approached a moving vehicle in a parking lot, and without displaying a weapon or making any gestures or uttering any commands for Defendant to stop, simply tapped on the vehicle's window. Had this window tap occurred in a similar situation involving a parked vehicle, the communicative effect would have been to gain the attention of the vehicle's occupant in order to initiate a consensual encounter and nothing more. We see no meaningful distinction in the communicative effect of the window tap— and surely not of constitutional dimension—on these facts, where the vehicle had barely begun to move after idling in a parking lot.

{22}    Viewing the circumstances in their totality, and balancing the intrusion into Defendant's privacy against the State's interest in crime prevention, *see Jason L.*, 2000-NMSC-018, ¶ 14, we conclude that Officer Adegite's approach on foot and his minimally intrusive tap on Defendant's car window did not constitute a "show of authority" at such a level of "accosting and restraint" that it would have conveyed the message to Defendant that she was not free to leave. Therefore, there was no seizure at the point at which Defendant stopped and rolled down her window.

**CONCLUSION**

{23}    Accordingly, we affirm.

{24}    **IT IS SO ORDERED.**

14

_____

**DANIEL J. GALLEGOS, Judge Pro Tempore**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**JULIE J. VARGAS, Judge**

15